IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| JOSHUA NATHANIEL BLACKMON, | ) | Case No. 25-02137-TOM-7 |
| | ) | |
| Debtor. | ) | |

## MEMORANDUM OPINION AND ORDER

This case came before the Court for a hearing on September 23, 2025, on the Amended Motion for Relief from Automatic Stay filed by LoanDepot.com, LLC (Doc. 46, the "Amended Motion"). Appearing before the Court were the Debtor, Joshua Nathaniel Blackmon, acting *pro se*; Andrew Saag, attorney for LoanDepot.com, LLC; and Dago Hernandez, witness for LoanDepot.com, LLC; and Tiffany Sanders, power of attorney for the Debtor. This Court has jurisdiction pursuant to 28 U.S.C. §§1334(b), 151, and 157(a) and the District Court's General Order Of Reference Dated July 16, 1984, As Amended July 17, 1984.[1] This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. §157(b)(2)(G).[2] This Court has considered the pleadings, the arguments of the Debtor and of counsel, the testimony, the evidence admitted, and the law, and finds and concludes as follows.[3]

---

[1] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:
> The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

[2] 28 U.S.C. §157(b)(2)(G) provides as follows:
> (b)(2) Core proceedings include, but are not limited to–
> . . .
> (G) motions to terminate, annul, or modify the automatic stay[.]

[3] This Memorandum Opinion and Order constitutes findings of facts and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to contested matters in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Bankruptcy Procedure 9014.

# FINDINGS OF FACT[4]

The Debtor, Joshua Nathaniel Blackmon, filed this Chapter 7 bankruptcy case on July 22, 2025.[5] On his Schedule A/B (Doc. 24), Mr. Blackmon indicates he owns a home on 11180 Lexington Drive, Duncanville, Alabama worth $500,000,[6] and that his ownership interest in the property is a life estate. Mr. Blackmon does not list any secured debt on Schedule D, but on Schedule E/F he lists creditor LoanDepot.com, LLC ("LoanDepot") as an unsecured creditor with a disputed claim of $451,044.00. According to Mr. Blackmon's schedules, the debt is a priority unsecured claim by way of being a "MORTAGE DEBT." Doc. 24, at 19.

On August 7, 2025, LoanDepot filed a Motion for Relief from Automatic Stay. Doc. 18. According to the attached note and mortgage, Mr. Blackmon borrowed $394,790.00 from LoanDepot on August 5, 2022. The affidavit also attached indicated that as of August 1, 2025, right at three years after the date of the loan, Mr. Blackmon was delinquent in the amount of $70,853.21 including past-due payments from September 1, 2023 through August 1, 2025, late charges, and various fees. His payoff was approximately $454,936.94 as of that date, an amount that is significantly more than the original amount of the loan.

On September 3, 2025, Mr. Blackmon filed a Response to "Motion for Relief from Automatic Stay [sic] (Doc. 33, the "Response") in which he asserts, in sum, that he does not owe the debt. LoanDepot filed a Notice of Withdrawal of Motion for Relief from Stay (Doc. 43) on September 16, 2025, that was ineffective[7] since the Debtor had already filed his Response.

---

[4] Without objection, this Court has taken judicial notice of all documents in its files and facts presented in prior hearings. Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. See *ITT Rayonier, Inc. v. US.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).
[5] The Chapter 7 Trustee's Report of No Distribution was filed on October 2, 2025.
[6] On Schedule C, under the column "current value of the portion you own," the Debtor gives the value of $509,000.00.
[7] *See* Doc. 44 and Rules 9014 and 7041 of the Federal Rules of Bankruptcy Procedure.

LoanDepot followed this with an Amended Motion for Relief from Automatic Stay (Doc. 46, the "Amended Motion") disclosing that LoanDepot had actually conducted a foreclosure sale on November 1, 2024; a copy of the recorded foreclosure deed was attached to the Amended Motion.[8] On September 19, 2025, the Debtor filed his own Request for Dismissal of Motion for Relief from Automatic Stay with Prejudice. Doc. 49.

In his opening arguments at the hearing, Mr. Saag, counsel for LoanDepot, informed the Court that an ejectment action had been filed on June 17, 2025, in state court in Tuscaloosa County. Mr. Saag proceeded to question his witness, Dago Hernandez, Bankruptcy Supervisor at LoanDepot. Mr. Hernandez testified that the property occupied by Mr. Blackmon had been foreclosed on November 1, 2024; furthermore, LoanDepot continued to own the property and would like to proceed with its ejectment action. According to Mr. Hernandez, the property had not been redeemed, and no attempt to redeem the property been made. A copy of the foreclosure deed, reflecting that LoanDepot was the highest and best bidder in the amount of $427,284.50, was introduced into evidence as Exhibit 1.

On cross examination, Mr. Blackmon showed Mr. Hernandez two documents. The first, introduced into evidence as Exhibit A, is a document Mr. Blackmon purported to be evidence that he, Mr. Blackmon, redeemed the property. The document consists of six pages. The first page of the document contains this statement:

---

[8] The copy of the foreclosure deed attached to the Amended Motion was labeled "Exhibit A" but the copy introduced into evidence was marked as "Exhibit 1."

DATE: 12-13-2024

I, Joshua Nathaniel Blackmon, the living man is recording this document to redeem my property within the 180 days that the State of Alabama allow, as the redemption period.

This statement cannot be written on the certified document because that will alter the document.

Without Prejudice, Without Recourse UCC 1-308 Joshua-Nathaniel: Blackmon[9]
                                            Joshua-Nathaniel: Blackmon, Beneficiary

Ex. A, at 1.[10] Pages two through four of the document consist of a copy of the foreclosure deed that had originally been recorded in the Probate Office of Tuscaloosa County, while page five is a Real Estate Sales Valuation Form apparently filed and recorded with the foreclosure deed.[11] The sixth page is a "certified copy page" signed by the Judge of Probate of Tuscaloosa County certifying that the document is a true and correct copy of the instrument recorded at Deed Book 2004, Page 23761. Pages one through five of the document were recorded, presumably by Mr. Blackmon, at Deed Book 2024 Pages 26361-26365, on December 13, 2024.

Hand-written on the second page of the document (the first page of the foreclosure deed) is the following:

> ACCEPTED FOR VALUE
> Redeemed in Lawful Money pursuant to 12 U.S.C. § 411.
> All credits and debits be settled and discharged in lawful money.
> I demand full discharge of the obligation in lawful money.
> Public Debt Obligation under 31 U.S.C. § 5118(a)(2).

Debtor's Ex. A, at 2. The same notation is written on the fourth and fifth pages of the document (the third page of the foreclosure deed and the Real Estate Sales Valuation Form). The notation was not written on the unrecorded "certified copy page." Upon questioning by Mr. Blackmon, Mr.

---

[9] Mr. Blackmon signed the document here.
[10] The statement on page one of Exhibit A has been copied here without alteration.
[11] The foreclosure deed and Real Estate Valuation Form were filed in the Probate Court of Tuscaloosa County at Deed Book 2024 Pages 23761-23764.

4

Hernandez testified that he did not know what the document was and that he was not aware that Mr. Blackmon had redeemed the property.

The second document shown to Mr. Hernandez by Mr. Blackmon, introduced into evidence as Exhibit B, consists of four pages with a "report date" of September 23, 2025 (the date of the hearing), printed from the website of Public Information Services.[12] Mr. Hernandez testified that he did not know what the document was. The first page of the document indicates that the current owner is Joshua Blackmon. It appears to the Court that the document may not be complete. For example, the first page of the document has a section titled "Ownership History (8)" which the Court presumes should include eight entries. Only three entries are shown on the first page, and all are dated November 4, 2024.[13] The Court would expect that the second page would continue with the ownership entries; however, the page starts with what appears to be details from Mr. Blackmon's purchase of the home from Island Realty Fo LLC[14] on April 10, 2020. The third page of the document begins with the category "Property Timeline (12)," which the Court presumes to mean that twelve events were found for property; two are listed on this page. The first event is dated November 4, 2024, and consists of two parts. As to the first, Joshua Blackmon is listed as the buyer and Treasurer of Tuscaloos [sic] is listed as the seller, and as to the second, LoanDepot.com LLC is listed as the buyer and Joshua Blackmon is listed as the seller. The second event is dated April 10, 2020, and lists Joshua N Blackmon as the buyer and Island Realty Fo LLC as the seller. Again, the Court would expect that the next page would continue with the remainder of the events but instead the fourth page starts with the category "Property Sales (5)." The only

---

[12] The web address shown at the top of all four pages is https://members.publicinfoservices.com/property-report.
[13] Out of those three entries, Mr. Blackmon is listed twice and LoanDepot.com LLC is listed between the two entries for Mr. Blackmon.
[14] On the second page the seller is identified as "Island Realty Fo LLC." It is unknown if "Fo" should actually be "Co."

sale is dated November 4, 2024, and lists the seller as the Treasurer of Tuscaloos [sic] and the buyer as Joshua Blackmon. There is a "Mortgage Recording Date" of December 2024. There are no more pages to Exhibit B after the fourth page. The second and fourth pages contain a notation at the top:

**WARNING – Independent verification of all displayed information is highly recommended.**

Ex. B at 2, 4 (emphasis added). Mr. Blackmon informed the Court that the document did not come from a government agency.

Mr. Blackmon then presented his own testimony. His position, to this Court's understanding, is that he believes he redeemed the property on December 13, 2024. According to his testimony:

> On December 13 of 2024, I went back to the probate to redeem my property . . . and it was filed in the deed book and it was put on notice and it was basically to redeem my property within 180 days. . . . In doing so I had attached on there the "to redeem in lawful money pursuant to the 12 U.S.C. subsection 411" and as you can see on there what's handwritten there . . . ."

Doc. 56 (audio file attached). Mr. Blackmon, according to this Court's understanding of his testimony, stated the Treasurer of Tuscaloosa sold his house back to him in December 2024. Mr. Blackmon stated he went to the Probate Office the day before the hearing and verified that the property was in his name. According to Mr. Blackmon, to this Court's understanding, he found documents on Public Information Services showing the property is in his name.[15] Mr. Blackmon stated he wanted to get a certain "actual document" from the treasury but was told he would have to get an attorney to get it for him. In his testimony Mr. Blackmon asserted that an insurance company for LoanDepot paid off his note. Further, his testimony included allegations that the note

---

[15] Presumably Mr. Blackmon is referencing the information found on his Exhibit B pulled from the Public Information Services website.

6

and mortgage had been separated and were thus null and void,[16] and "that the note has been securitized and therefore I, myself, Joshua Nathaniel Blackmon, has a security interest." Doc. 56 (audio file attached). On cross examination, counsel for LoanDepot asked Mr. Blackmon if he submitted a redemption request to or received a redemption statement from LoanDepot. Mr. Blackmon responded that he submitted what he had and that he did receive a redemption statement but did not have a copy with him. When asked if he made a payment to LoanDepot as part of the redemption process Mr. Blackmon stated that he did, "in lawful money."

Mr. Blackmon recalled Mr. Hernandez to the stand and asked him several questions which were either sustained on objection or to which Mr. Hernandez replied that he did not know the answers.[17] On further questioning by counsel for LoanDepot, Mr. Hernandez testified that LoanDepot did not receive a redemption request or redemption funds from Mr. Blackmon and that LoanDepot did not issue Mr. Blackmon a redemption deed. The Court notes that Mr. Blackmon did not offer into evidence any documents reflecting a written request to redeem from him to LoanDepot, and further, he did not offer any proof of payment in official United States currency regarding a redemption.

Mr. Blackmon attended the hearing with Tiffany Sanders, who introduced herself as his power of attorney.[18] Ms. Sanders stated that she is not a licensed attorney. The Court explained to Mr. Blackmon and Ms. Sanders that while Ms. Sanders could be with him and speak with him, she could not perform the duties of a licensed attorney such as questioning witnesses.

## CONCLUSIONS OF LAW

**Power of Attorney**

---

[16] Mr. Blackmon cited *Carpenter v. Logan*, 83 U.S. 271 (1872) as support for his argument.
[17] The questions can be found on Defendant's Affidavit of Facts (Doc. 45) filed by Mr. Blackmon.
[18] The Power of Attorney document was not introduced into evidence but was scanned and filed into the Court's ECF system. Doc. 59.

As an initial matter, the Court will address Ms. Sanders. It is not clear what role Mr. Blackmon intended for Ms. Sanders to play, but the Court explained to him that Ms. Sanders could not act in any manner that could be considered as practicing law. In a recent case from the District Court for the Southern District of Alabama, a plaintiff wanted his wife to speak for him due to his disability. *Burks v. DeepSeafood*, Civil Action No. 22-00008-TFM-B, 2022 WL 21794375, at *1 (S.D. Ala. June 27, 2022). The Court stated:

> Individual parties in federal court generally "may plead and conduct their own cases personally or by counsel ...." 28 U.S.C. § 1654. "That is, a plaintiff must either proceed *pro se* or be represented by a licensed attorney." *Hui Yu v. U.S. Dep't of Homeland Sec.*, 568 F. Supp. 2d 231, 234 (D. Conn. 2008). "The right to appear *pro se*, however, is limited to parties conducting 'their own cases,' and does not extend to non-attorney parties representing the interests of others." *FuQua v. Massey*, 615 F. App'x 611, 612 (11th Cir. 2015) (per curiam).

*Id.* The court thus determined that the plaintiff's wife could not speak for him. *Id.* This Court likewise could not allow Ms. Sanders to examine witnesses or otherwise act as an attorney on behalf of Mr. Blackmon.

**Relief from the Automatic Stay**

The filing of a petition for relief under any chapter of the Bankruptcy Code operates as a stay of certain actions. 11 U.S.C. § 362(a). Typically, the actions stayed are actions by creditors to recover from the debtor, property of the debtor, or property of the estate for a debt that arose prior to the petition date. A party in interest may obtain relief from this automatic stay under the provisions of 11 U.S.C. § 362(d), which provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
>   (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>   (2) with respect to a stay of an act against property under subsection (a) of this section, if--
>     (A) the debtor does not have an equity in such property; and

8

(B) such property is not necessary to an effective reorganization;

11 U.S.C. § 362(d).

In other words, subsection (1) of § 362(d) provides that the court shall grant relief from the stay upon a showing of "cause" including (but not limited to) the lack of adequate protection of an interest in property. Subsection (2) of § 362(d) provides that the court shall grant relief from the stay of an act against property of the debtor or of the estate if the debtor does not have equity in the property and the property is not necessary to an effective reorganization. Subsection (3) of § 362(d) applies only in single asset commercial real estate cases and, therefore, is not applicable to this case.

LoanDepot has requested relief under Bankruptcy Code § 362(d)(l). As mentioned, the court shall grant relief from the stay upon a showing of "cause" including a lack of adequate protection. 11 U.S.C. § 362(d)(1). Courts evaluating cause "look to the 'totality of the circumstances.'" *State Farm Fla. Ins. Co. v. Carapella (In re Gaime)*, 17 F.4th 1349, 1355 (11th Cir. 2021). In *In re BFW Liquidation, LLC*, the court explained:

> In determining "cause," a court should, "consider the policies underlying the Bankruptcy Code as well as the competing interests of the creditor, debtor, and other parties in interest" when exercising its discretion in granting a motion for relief for cause. Thus, cause is an inherently broad and flexible concept, allowing the bankruptcy court to resolve matters based on the unique facts of each situation.

*In re BFW Liquidation, LLC*, No. 09-00634-BGC-11, 2009 WL 8003536, at *1 (Bankr. N.D. Ala. Sept. 14, 2009) (Cohen, J.) (citation omitted). The parties' conduct, motives, and good or bad faith are just a few factors that may be examined when looking at the totality of the circumstances. *In re Mack*, 347 B.R. 911, 915 (Bankr. M.D. Fla. 2006).

The lack of adequate protection is the only example of cause found in § 362(d)(1). As one court has noted, "the concept of adequate protection seeks to maintain the status quo between the

9

secured creditor and the debtor while the debtor attempts to reorganize." *In re West Nottingham Academy in Cecil County*, 662 B.R. 103, 114 ( Bankr. D. Md. 2024) (citation omitted). As one court has explained:

> "Adequate protection is designed to protect a secured creditor's interest in property from any decrease in value attributable to the automatic stay." Its purpose "is not to protect the secured creditor from loss per se, but to maintain the status quo and prevent any additional loss due to delay after a debtor files its [bankruptcy] petition."

*In re Campanella*, Case No. 24-20445-SMG, 2025 WL 670646, at *1 (Bankr. S.D. Fla. Feb. 28, 2025) (quoting *In re Rich Int'l Airways, Inc.*, 50 B.R. 17, 18 (Bankr. S.D. Fla. 1985), then *Matter of Karl A. Neise, Inc.*, 16 B.R. 600, 601 (Bankr. S.D. Fla. 1981)) (footnotes omitted).

The Debtor's failure to make the regular mortgage payments each month may be "cause." *E.F. Hutton Mortg. Corp. v. Williams (In re Williams)*, 68 B.R. 442 (Bankr. M.D. Ga. 1987) (failure to make post-confirmation payments can constitute cause for lifting the stay). Here, it appears that Mr. Blackmon had not made a payment on the mortgage debt after August 2023, since the affidavit filed with the original Motion for Relief from Stay (Doc. 18) reflects that prepetition mortgage payments were due beginning with the month of September 1, 2023. Mr. Blackmon's failure to make mortgage payments by itself would support LoanDepot's request for relief from the automatic stay.

In addition, cause exists to lift the stay because LoanDepot foreclosed on the mortgage long before Mr. Blackmon filed his bankruptcy case. Mr. Hernandez testified that a foreclosure sale took place on November 1, 2024, and a copy of the foreclosure deed was introduced into evidence at trial as Exhibit 1. Under Alabama law,[19] once a foreclosure has taken place, the mortgagee (the creditor) becomes the owner of the property. *In re McKinney*, 174 B.R. 330, 334

---

[19] Foreclosures themselves are governed by state law. *In re McKinney*, 174 B.R. 330, 333 (Bankr. S.D. Ala. 1994).

10

(Bankr. S.D. Ala. 1994). "[W]here a pre-bankruptcy sale has already occurred, courts have routinely held that relief from the bankruptcy stay generally is appropriate so the buyer may eject the debtor." *In re Dunlop*, 378 B.R. 85, 92 (Bankr. E.D. Pa. 2007) (collecting cases). As one bankruptcy court has explained:

> Although the debtor currently is in possession of the [property], possession by a debtor alone, without any right of ownership or contractual right to possession, is not protected to any great degree by the bankruptcy stay. Relief from the stay is typically granted to the owner, or a secured creditor of the owner, when the debtor has no right to possession. Embedded in the concept of "cause" for relief from the bankruptcy stay is the issue of whether there is some legitimate purpose to be served in bankruptcy by keeping the debtor in possession. If bankruptcy serves no legitimate purpose in retaining the debtor's possession, then the property owner should be granted relief from the stay to exercise its non-bankruptcy law rights to recover possession from the debtor.

*Dunlop*, 378 B.R. at 92 (citations omitted). In this case, LoanDepot foreclosed on Mr. Blackmon's mortgage, purchased the property at the foreclosure sale, and is now the owner of the property.

As already mentioned, foreclosures are governed by state law. Under Alabama law, "[t]he conveyance of a valid foreclosure deed terminates all rights of the mortgagor in the property covered by the mortgage, subject only to the mortgagor's statutory right of redemption." *Larsen v. WF Master REO, LLC*, 360 So. 3d 357, 371-72 (Ala. Civ. App. 2022) (citations omitted). It has been explained:

> To exercise a statutory right of redemption, debtors have to pay the full amount of the debt owed under the mortgage. The Alabama Supreme Court has decided that "the law does not allow piecemeal redemption, absent an agreement for it . . . ." *Costa & Head (Birmingham One) v. National Bank of Commerce of Birmingham*, 569 So.2d 360 (Ala.1990). This concept of full payment has recently been upheld in this district. In *Shields v. Federal Nat'l Mortgage Ass'n*, 1992 WL 687866 . . . (S.D.Ala. Dec. 14, 1992), the district court decided that "to redeem, a cash lump sum must be paid which includes the principal, interest and certain other charges." *Id.* at *3

*McKinney*, 174 B.R. at 334.

11

Case 25-02137-TOM7   Doc 63   Filed 10/03/25   Entered 10/03/25 15:56:18   Desc Main
Document    Page 11 of 14

It appears from Mr. Blackmon's testimony that he believes he redeemed the property by recording the foreclosure deed that contains the notation:

> ACCEPTED FOR VALUE
> Redeemed in Lawful Money pursuant to 12 U.S.C. § 411.
> All credits and debits be settled and discharged in lawful money.
> I demand full discharge of the obligation in lawful money.
> Public Debt Obligation under 31 U.S.C. § 5118(a)(2).

Ex. A. Alabama law is clear that in order to redeem property a debtor must pay, in one lump sum, the entire debt that is owed including principal, interest, fees, and other charges. Upon questioning by counsel for LoanDepot, Mr. Blackmon stated that he made payment to LoanDepot "in lawful money." Mr. Hernandez, however, testified that LoanDepot never received funds from Mr. Blackmon. It may be Mr. Blackmon's belief that he could redeem his property by recording the deed containing certain language but, as another court stated, "[t]his Court is not free to deviate from the clear and unambiguous language of the statute." *In re Sims*, 185 B.R. 853, 867 (Bankr. N.D. Ala. 1995). Likewise, this Court must follow the clear language of the Alabama statute that dictates how redemption may be accomplished in what time frame.[20] As explained in *McKinney*, the debt, in excess of the bid price of $427,284.50, would have to be repaid in "a cash lump sum." Mr. Blackmon may be sincere in his belief that he redeemed the property, but he has not provided the Court with any evidence that he paid the redemption price, in official United States currency, to LoanDepot. Therefore, Mr. Blackmon has not given this Court sufficient evidence of such payment for this Court to overrule LoanDepot's request for relief from the automatic stay.

Mr. Blackmon's Exhibit B, the pages apparently printed from the Public Information Services website, indicates that Joshua Blackmon currently owns the property; however, this

---

[20] In his testimony Mr. Blackmon mentioned that he recorded the foreclosure deed "redeeming" the property within 180 days of the foreclosure date, which indicates Mr. Blackmon is familiar with the redemption statute, Alabama Code § 6-5-248.

document is not credible proof that Mr. Blackmon truly owns the property. The Court is unfamiliar with the website and does not know for certain from where Public Information Services pulls its information. Mr. Blackmon admitted that it is not a government website. It appears that some information from the website is missing; for example, the first page indicates there are eight entries under the heading "Ownership History" but only three are displayed. The Court does not know how the Treasurer of Tuscaloosa could be the seller of the property as reflected a couple of times in Exhibit B since there is no evidence that the Treasurer of Tuscaloosa ever owned the property. There is no evidence that the information contained in Exhibit B is valid or reliable and this Court does not consider it credible. In fact, the second and fourth pages of the exhibit itself warns that "[i]ndependent verification of all displayed information is highly recommended." Exhibit B at 2, 4. In addition, Mr. Blackmon's testimony that he was told by the Probate Office in Tuscaloosa County that he still owned the property is hearsay that cannot be considered by this Court.

This Court does not take lightly the granting of a motion for relief from stay when a debtor's home is involved. This Court is sympathetic to Mr. Blackmon's plight, as it is to the thousands of debtors who have pending cases before this Court. In fact, motions for relief from the stay regarding home mortgages are routinely filed in these cases and this Court hears generally 15-30 such motions every week. The Court recognizes that Mr. Blackmon recently purchased the property in August 2022, and that he would like to retain the property; but this Court has no choice except to follow the law as it is written. Because LoanDepot has conducted a foreclosure sale of the property, there is nothing that this Court can do to provide any relief to Mr. Blackmon. It appears that Mr. Blackmon is sincere in his belief that he has redeemed the property; however, foreclosures are governed under Alabama law and the law is clear that redemption must be accomplished in a certain manner. Mr. Blackmon has not established that his attempt at redemption

13

is sufficient under Alabama law to overcome LoanDepot's right to receive relief from the automatic stay. A state court eviction action involving Mr. Blackmon and LoanDepot is pending in the Alabama state court, and Mr. Blackmon may be able to seek relief in that action. Based on the evidence before it, this Court concludes that LoanDepot's Amended Motion is due to be granted. It is therefore

**ORDERED, ADJUDGED and DECREED** that LoanDepot.com, LLC's Amended Motion for Relief from Automatic Stay is **GRANTED**. It is further

**ORDERED, ADJUDGED, and DECREED** that the Debtor's Request for Dismissal of Motion for Relief from Automatic Stay with Prejudice is **DENIED**.

Dated: October 3, 2025                                      /s/ Tamara O. Mitchell
                                                                                                  TAMARA O. MITCHELL
                                                                                                  United States Bankruptcy Judge

TOM/dgm